STATE, *for use of* HICKEY, *v.* JOE FREEMAN.

(*Nashville.* December Term, 1921.)

1. **GUARDIAN AND WARD.** Guardian acting as parent cannot charge ward for support.

A guardian who has taken a ward into his home and acted as a parent without showing an intention to charge for support or filing annual statements of account with the county court clerk, as required by Thompson's Shannon's Code, section 4296, by which he could disclose that intention, may not charge therefor; the intention not to charge being inferred. (*Post, pp.* 306, 307.)

Cases cited and approved: Guion v. Guion's Adm'r, 16 Mo., 48; Mc-Dowell v. Caldwell, 2 McCord, Eq. (S. C.), 43; Abrams v. U. S. Fid., etc., Co., 127 Wis., 579; Maguinay and Saudek, 37 Tenn., 147; Norton v. Ailor, 79 Tenn., 563.

Code cited and construed: Sec. 4296 (T.-S.).

2. **GUARDIAN AND WARD.** Guardian may recover reasonable charge for clothing bought, where ward's funds were insufficient.

A guardian, who acted as a parent of his ward, but used her available money to buy clothing for her, supplementing it with his own money in order to dress her suitably, may recover a reasonable charge therefor, where his conduct showed no intention not to make such charge. (*Post, pp.* 307, 308.)

---

FROM SHELBY.

---

Appeal from the Chancery Court of Shelby County.— HON. ISRAEL H. PERES, Chancellor.

JOHN W. PALMER, for appellant.

L. J. MONTEVERDE, for appellee.

MR. JUSTICE GREEN delivered the opinion of the Court.

This suit was brought for the use of a minor to have an accounting with her guardian. Only one item is in controversy on appeal. The guardian made a charge for board and maintenance against his ward amounting to about $1,900. This charge was allowed by the master, but disallowed by the chancellor, and the guardian and his sureties have appealed to this court.

The minor was left an orphan when she was thirteen years old. The defendant Freeman was a friend of her family, and, the girl having no near relatives, Freeman took her into his home. He qualified as her guardian. Freeman received as guardian about $1,200 in cash. The girl also had four small lots in Memphis, some of which were improved and yielded a small revenue.

The guardian kept the girl's funds in a separate bank account. He used her money in buying clothes and other things for her and paying her taxes, and improving and keeping up her real estate. The guardian was in the grocery business at Memphis. He owned his home where he lived with his wife and her three sons, his stepchildren. The girl lived in his house as a member of his family. The relations between the guardian and his family and the girl were very affectionate. The guardian treated the ward as his own child and called her "daughter." She called him "father," and his wife "mother." The girl helped about the housework and helped keep the books in her guardian's store at times. She was sent to school, well looked after, and as stated before, was treated just as the guardian would have treated his own daughter. He says

that he treated her with more consideration that he did his stepchildren because she was a girl.

This relationship continued for about five and one-half years. During that time the guardian never filed any account of the profits and disbursements of the ward's estate, nor any statement or list of her property with the county court clerk.

When the girl would require clothes or other things, it seems to have been the custom of the guardian to use her money if she had any on hand. If she had no funds available, he would get her what she needed and pay for such articles himself.

After being in her guardian's home for something over five years, the girl left there and went to some relatives in Mississippi. She says she left because she could not get along with one of the guardian's stepsons. After she left this suit was brought.

A guardian is ordinarily under no obligations to support and maintain his ward out of his own funds. If, however, the guardian takes the ward into his home and voluntarily assumes the attitude of a parent, without intimating any intention of charging the ward for support, the inference is that such support was furnished gratuitously. Under such circumstances, the guardian cannot afterwards bring forward a charge for support. 12 R. C. L., p. 1159; *Guion* v. *Guion's Adm'r*, 16 Mo., 48, 57 Am. Dec., 223; *McDowell* v. *Caldwell*, 2 McCord, Eq. (S. C.), 43, 16 Am. Dec., 635; *Abrams* v. *U. S. Fidelity, etc., Co.*, 127 Wis., 579, 106 N. W., 1091, 5 L. R. A. (N. S.), 575, 115 Am. St. Rep., 1055. Other cases to this effect are collected in a note 57 Am. Dec., 226. See, also, 21 Cyc., 68.

Our own cases fully accord with the rule above stated, the question in Tennessee having arisen upon a claim of this character made under these circumstances by a stepfather. *Maguinay* v. *Saudek*, 37 Tenn. (5 Sneed), 147; *Norton* v. *Ailor*, 79 Tenn. (11 Lea), 563. The obligation of the stepfather and the obligation of the guardian in this particular are not different.

We think it is reasonably clear from this record that the guardian here had no intention of making a charge against the ward for board and lodging in his home and the care given her by his wife and himself. This charge appears to be an afterthought consequent upon this suit. Under the authorities cited, such a claim should not be allowed. It was the duty of the guardian to file annual statements of his account with his ward. Thompson's Shannon's Code, section 4296. If he had intended making a claim for her board and lodging, he might have filed with the county court clerk the statements required and disclosed this intention. In the cases relied on by the guardian where claims similar to this have been allowed, the courts have always found some excuse for the failure of the guardian to make the settlements required of him by law. We find no excuse here, and we find no intimation of any intention on the part of the guardian to claim reimbursement for the board and lodging of his ward until after this litigation arose. Such a claim can not be allowed now.

As to the ward's clothing and certain other expenses the situation is different. This guardian used her money to buy clothes for her so far as she had money available. There is nothing in his conduct which indicated a purpose on his part to do more than supply what her means lacked of being sufficient to dress her suitably. On the contrary,

State ex rel. v. Freeman.

his conduct showed he did not intend to assume this entire burden.

The guardian in his testimony says that he thinks he should be allowed $10 a month for the girl's clothes. He says this would not cover the cost of her wardrobe, but that he claims no more. The record indicates that this is a reasonable charge and it should be allowed. The period for which this allowance is claimed is 66 months.

We are of opinion, therefore, that a further credit should be made to this guardian of $660. Thus modified, the decree of the chancellor will be affirmed. Appellants will pay two-thirds of the costs of this court, and appellee will pay one-third of the costs of this court. The costs below will remain as taxed by the chancellor. The cause will be remanded for further proceedings.